Charles STOKES, Plaintiff,

v.

BECHTEL NORTH AMERICAN POWER CORPORATION; Bechtel Power Corporation, Pacific Gas & Electric, Code III, Doe Companies One through Twenty-Five, inclusive, and Does One through Twenty-Five, inclusive, Defendants.

No. C–84–8038 JPV.

United States District Court, N.D. California.

July 1, 1985.

Stephen T. Cox, Barbara A. Zuras of Hoberg, Finger, Brown, Cox & Molligan, San Francisco, Cal., for plaintiff.

William F. Hoefs, Kennedy P. Richardson, Douglas P. Kight, Daniel P. Westman of Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for defendants Bechtel North American Power Corp. and Bechtel Power Corp.

Henry J. LaPlante, John R. Low of Pacific Gas & Elec. Co., San Francisco, Cal., for defendant Pacific Gas & Elec.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT

VUKASIN, District Judge.

### INTRODUCTION

Plaintiff Charles Stokes is a nuclear engineer who was hired in November of 1982 by defendants [collectively, "Bechtel"] as a field engineer at the Diablo Canyon Nuclear Power Plant ["Diablo Canyon" or the "Plant"] in San Luis Obispo, California. Under the terms of his employment agreement, Stokes was to identify and report on quality assurance deficiencies in the pipe support and pipe stress designs at the Plant. He claims that he diligently and satisfactorily performed his duties; nonetheless, his employment with Bechtel was terminated on October 14, 1984, allegedly in retaliation for his refusal to suppress information concerning quality assurance problems and design miscalculations at Diablo Canyon.

Plaintiff's first amended complaint was filed in California Superior Court for the County of San Francisco on November 14, 1984. Bechtel was served on November 28, 1984, and filed its petition for removal the following December 28. The complaint states seven causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) wrongful discharge; (4) negligent misrepresentation; (5) infliction of emotional distress; (6) tortious conspiracy to interfere with contractual relations; and (7) violations of California Public Utilities Code § 2106. It is apparently uncontested that all but plaintiff's claim for wrongful discharge are properly-pled state law causes of action. Defendants contend, however, that this third cause "arises under" federal statutes regulating the field of nuclear power safety and

that it is accordingly preempted by such statutes. On the theory that this preemption vests removal jurisdiction in this Court, Bechtel urges the Court to hear plaintiff's remaining claims under the exercise of its pendent jurisdiction.

Plaintiff has now moved to remand this action to state court. For the reasons detailed below the court hereby issues its Order granting the motion to remand.[1]

### DISCUSSION

#### 1. Removal Jurisdiction of this Court

Because the federal courts are courts of limited jurisdiction, the removal statutes, 28 U.S.C. § 1441 et seq., must be given a strict construction, and the burden of establishing federal jurisdiction is upon the removing party. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); see also Hunter v. United Van Lines, 746 F.2d 635, 639 (9th Cir.1984); Salveson v. Western States Bankcard Assoc., 731 F.2d 1423, 1426 (9th Cir.1984). It is axiomatic that a case arises under federal law only if a federal question appears on the face of plaintiff's well-pleaded complaint;[2] there is no federal question jurisdiction even if a properly-raised defense is predicated on federal law. See, e.g., Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Because removal jurisdiction exists only if jurisdiction would originally have been proper in federal court, the rule of the well-pleaded complaint applies to removal cases as well. Hunter, supra, 746 F.2d at 639, citing Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

---

1. The Court initially notes that a case presenting similar issues of law was filed in this District and assigned to Judge Orrick, *Parks v. Bechtel Power Corp., et al.,* No. C–84–8037 WHO. Upon plaintiff in that action filing a motion to remand, the Judge issued his opinion remanding the action to state court.

2. Inasmuch as plaintiff is a California resident, and each corporate defendant is both authorized to do business in California and has its principal place of business in San Francisco, there is no assertion that there is federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.

■ Thus, to a considerable degree, a plaintiff is the master of his complaint: he is free to ignore a federal cause of action—even if the facts upon which his claims are based would give rise to such a cause—and rest the complaint solely on state law. *Garibaldi v. Lucky Food Stores,* 726 F.2d 1367, 1370 (9th Cir.1984); *cf. The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 26, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Great weight is therefore given to plaintiff's chosen forum, and any legitimate doubts as to the existence of federal jurisdiction must be resolved against removal and in favor of remand. *See generally* 1a Moore & Ringle, *Moore's Federal Practice,* ¶ 0.157[1.—3] at p. 43 and n. 23.

Bechtel concededly could not have removed the present action to this Court on the basis of the literal recitals of plaintiff's state law complaint. The theory upon which defendants postulate federal jurisdiction, in synopsis, is that Stokes' third cause of action is in fact preempted by federal atomic energy statutes, particularly the Energy Reorganization Act of 1974, as amended, 42 U.S.C. §§ 5801 *et seq.,* and that the so-called "artful pleading" doctrine empowers this Court to recharacterize that claim as a federal cause of action. As a secondary argument, Bechtel submits that federal law respecting nuclear safety will of necessity be implicated in any adjudication of plaintiff's complaint and hence is an essential element of his purported state law claims.

### 2. "Artful Pleading" and Federal Preemption

■ The artful pleading doctrine is a judicial construction which enables the district court to look at the underlying nature of a complaint when the pleader has improperly endeavored to defeat removal by pleading what is in fact a federal cause of action disguised as a state claim. *See Hunter, supra,* 746 F.2d at 640–41; *Garibaldi, supra,* 726 F.2d at 1370, and cases cited therein; *see also Franchise Tax Board, supra,* 103 S.Ct. at 2853–2855; *Federated Dept. Stores, Inc. v. Moitie,* 452

U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *see generally* 14a Wright, Miller & Cooper, *Federal Practice & Procedure* § 3722 (West 1985). In certain limited circumstances, the removal court will evaluate the language of the complaint, and, if necessary, will look elsewhere to ascertain facts that would appear in a well-pleaded complaint, to determine whether the plaintiff is omitting from his claim essential federal law, or has cast in state law terms a claim that can be made only under a federal statute. *See Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468, 1472–73 (9th Cir.1984); *but see Garibaldi, supra,* 726 F.2d at 1370 n. 5. Recognizing that "the form which the plaintiff by his voluntary action" has given to the pleading may conceal a multitude of sins, the doctrine represents a minor incursion upon plaintiff's sphere as "master of the complaint": in order to effectuate the general purposes of the removal statutes the pleader is held accountable for those seemingly phantom elements of federal law which—although critical to his complaint—he has scrupulously avoided in order to deny defendant his right to proceed in federal court. *See Great Northern Ry. Co. v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 240, 62 L.Ed. 713 (1918) (quotation). Thus, in appropriate circumstances, a complaint, artfully pled to defeat federal jurisdiction, may be recharacterized as one arising under federal law. *Olguin, supra.*

■ "Artful pleading" is a doctrine whose contours are not yet clearly delineated. Up to the present, it has been invoked chiefly in the field of federal labor law. *See, e.g., Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir.1983); *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1212 (9th Cir.1980); *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978); *Johnson v. England,* 356 F.2d 44, 46–48 (9th Cir.), *cert. denied,* 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966). Courts have embraced the doctrine with varying degrees of ardor; as this Circuit has cautioned, "[t]he artful

pleading doctrine is to be invoked only in *exceptional circumstances* as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Salveson, supra,* 731 F.2d at 1427 (emphasis added). Unfortunately, little clue is forthcoming from the cases as to what circumstances may properly be considered exceptional. *See Hunter, supra,* 746 F.2d at 642. There is a palpable measure of tension between the rights secured to defendants by the removal statutes and the well pleaded complaint rule, and it has been urged, among other solutions, that Congress confer upon the federal courts removal jurisdiction over cases in which the defendant first raises federal by way of his answer or defense. *See, e.g.,* American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* § 1312 (1969), *cited* in *Hunter, supra,* 746 F.2d at 639; *see also Franchise Tax Board, supra,* 103 S.Ct. at 2847 n. 9, and authorities collected therein. In view of Congress' refusal to act, however, the rule remains valid. Because of this—and after a consideration of the relevant authorities, then—this Court believes that the artful pleading doctrine should be invoked only in the limited, and genuinely exceptional circumstances where it appears that the complaint is drafted not with an eye to vindication of plaintiff's substantive legal rights, but with the cardinal objective of denying defendant his right to a federal forum. This is to state the test strictly; however, the Court is convinced that to extend the doctrine any further would permit an indefatigable defendant to remove on little more than the speculation that by his endless winnowing the complaint might be made to divulge some inchoate germ of federal jurisdiction. This, in turn, would tend to a general erosion of the well-pleaded complaint rule, exacerbating the vexatious cycle of automatic removal and concomitant remand, with an inevitable friction developing between the spheres of state and federal jurisdiction.

These considerations, amorphous as they may appear, become more concrete upon an examination of the relationship between artful pleading and the doctrine of federal preemption.

■■■ A congressional enactment may preempt state authority by its express terms, and where there is clear congressional intent to occupy a given field, any state law falling therein is supplanted. *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), *citing Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In the absence of explicit preemptive language, congressional intent to entirely supercede state law may be demonstrated either by a scheme of federal regulation so pervasive as to make reasonable the inference that preemption was intended; or by an Act of Congress which touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject; or because the object sought by the federal law and the character of the obligations imposed by it may reveal the same purpose. *Pacific Gas & Electric, supra, citing Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Even where Congress has not entirely displaced state regulation in a particular area, state law is nonetheless preempted to the extent it actually conflicts with federal law, i.e., when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Pacific Gas & Electric Co., supra, citing Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *see also Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed. 443 (1984).

When their alleged removability brings original state law actions before the district courts, a still-evolving synthesis of the artful pleading and preemption doctrines furnishes a test by which the existence of federal jurisdiction may be determined. As recently announced by the Ninth Circuit, this test provides that "the artful pleading doctrine applies only when federal law not only displaces state law but also confers a federal remedy." *Hunter, supra,* 746 F.2d at 642. In perhaps the most thoroughgoing analysis to date of the interrelationship between the two doctrines, the Court in *Hunter* specifically rejected the argument that federal jurisdiction was proper under the artful pleading doctrine whenever preemption is found to exist, stressing that to so hold would be to "entirely eliminat[e] the general rule that federal jurisidiction does not exist simply because the defendant claims preemption as a defense." *Id.* at 641. Where a claim is preempted by federal law, the proper avenue for the district court is remand for lack of subject matter jurisdiction, based on the theory of derivative jurisdiction, *see, e.g., Freeman v. Bee Machine Co.,* 319 U.S. 448, 449, 63 S.Ct. 1146, 1147, 87 L.Ed. 1509 (1943), followed ultimately by dismissal on the merits in state court because of the existence of federal preemption. *Hunter, supra,* 746 F.2d at 641. Under artful pleading, however, subject matter jurisdiction in the district court is proper, and the court retains jurisdiction to hear the case. So far as the doctrine is concerned, then, preemption is no more than the initial term of the equation. In order for the court to retain jurisdiction, it must further be demonstrated that, but for plaintiff's exertions in seeking to avoid the federal forum, the complaint would give rise on its face to a federal cause of action. Hence the additional requirement that scrutiny of the purported state law complaint further reveals a federal remedy. The subject matter of the complaint must therefore be preempted by federal law, while at the same time the removal court must ascertain the existence, however disguised by plaintiff's craft in framing the complaint, of a federal statute conferring the relief prayed for. Absent this, preemption operates as a defense only, and the general rule applies.

> When federal law displaces state law without supplanting it, a plaintiff cannot be deemed to be attempting to avoid a federal cause of action; there is no federal cause of action to avoid.

*Hunter, supra,* 746 F.2d at 643; *see also Guinasso v. Pacific First Federal Savings & Loan Ass'n,* 656 F.2d 1364, 1367 (9th Cir.), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982).

In summary, the artful pleading analysis, most recently synthesized in *Hunter,* requires removal courts to evaluate a complaint through several stages in order to ascertain whether there is federal jurisdiction. First, under the rule of the well-pleaded complaint, the court examines the complaint to determine whether or not federal jurisdiction exists on the face thereof. If so, the analysis need proceed no further. If not—and if the removing defendant has raised a serious claim of preemption—the court must then scrutinize the complaint, and possibly the petition for removal and the answer as well,[3] to find

---

**3.** As the discussion at p. 735, *supra,* indicates, there appears to be some question within this Circuit as to whether the removal court should look beyond the four corners of the complaint in order to determine whether removal was proper under the artful pleading doctrine. In *Garibaldi, supra,* the Court appeared to discourage this approach, stating that

> [t]he distinction between an artfully pled complaint and one that is preempted, but not removable, lies in whether the removing court must "look beyond plaintiff's complaint, to the petition for removal or the answer, to find

a federal question" or whether "the facts alleged were sufficient to state a federal cause of action" on the face of the complaint. *State of California v. Glendale Federal Savings and Loan Association,* 475 F.Supp. 728, 732 (C.D. Cal.1979). *The former is not removable; the latter is removable because artfully pled.* 726 F.2d at 1370 n. 5 (emphasis added). However, in *Olguin, supra,* the Court endeavored to explain this language, stating that *"Garibaldi* found removal to be improper because the plaintiff's cause of action was not preempted by federal law, not because the district court went

out whether such preemption indeed exists. If not, there is clearly no federal jurisdiction, and remand is proper. If so, the court must embark on the final step of the analysis, seeking to determine whether a remedy is provided by federal law. Failing this, the removal court is without jurisdiction, and must remand the action to state court for eventual dismissal on the merits. If, however, a remedy under federal law is found to exist—and, implicit in *Hunter* is the proposition that this remedy be comprehensive in scope, furnishing a plaintiff with relief coextensive with that accorded by available state remedies—then the court is indeed presented with a complaint which has been artfully pled to defeat adjudication in the federal forum, and jurisdiction there is proper.

### 3. Application of the Foregoing

The Court's attention must now be directed to the examination of whether, as defendants insist, California's law of wrongful discharge is unilaterally preempted by federal atomic energy statutes when the complaining party chanced to be employed in the nuclear power industry. The Court will further ascertain whether the federal remedy advanced by Bechtel, Section 210 of the Energy Reorganization Act, 42 U.S.C. § 5851, satisfies the *Hunter* standard both by evidencing congressional intent to preempt and by furnishing plaintiff with his exclusive federal recourse.

### (A) Preemption

Defendants' preemption argument is based on the thesis, reiterated with unflagging enthusiasm throughout their papers, that the "federal interest in nuclear power plant safety is so dominant as to preclude enforcement of any state law cause of action designed to promote nuclear power plant safety." Dft's Opp., at 10:11–13.

Plaintiff does not question this statement of law. Indeed, at least since the decision of the United States Supreme Court in *Pacific Gas & Electric Co., supra,* it appears settled that regulation of the radiological safety aspects of nuclear power plants lies within the exclusive purview of the federal government. *Pacific Gas & Electric Co.,* however, does not endorse the monolithic theory advocated by Bechtel. Rather, the decision supports the proposition that, in certain circumstances—comprising the purely economic, non-safety aspects of nuclear power—state authority is not abrogated by the comprehensive federal radiological safety scheme. *Id.,* 461 U.S. at 211–14, 103 S.Ct. at 1723, 1726–27. At issue in *Pacific Gas & Electric Co.* was whether Section 25524.2 of the California Public Resources Code—which imposes a moratorium on the certification of new nuclear plants until the State Energy Resources and Conservation Commission "finds that there has been developed and that the United States through its authorized agency has approved and there exists a demonstrated technology or means for the disposal of high-level nuclear waste," *id.,* Cal.Pub.Res.Code § 25524.2(a)—was preempted by the Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.* In finding

beyond the face of the complaint." 740 F.2d at 1473. The Court in *Olguin* concluded that

> in determining whether a complaint is "artfully pleaded", the court is not bound to consider only the facts pleaded in the complaint but may look elsewhere to ascertain facts that would appear in a "well pleaded" complaint. If on those facts it is apparent that the plaintiff can only proceed under federal law, the complaint is properly removable.

*Id.* (footnote omitted). Inasmuch as *Olguin* is the latest word from the Ninth Circuit on this issue, this Court has adopted the viewpoint expressed therein, and has considered, in addition to the complaint itself, defendants' December 28, 1984, petition for removal.

*Olguin,* in any event, appears to advance the better view; as the Court there stated:

> The artful pleading doctrine would afford little protection if a plaintiff could avoid federal jurisdiction simply by leaving out material facts.... [T]he defendant's removal petition may be considered because the plaintiff's complaint—especially one that is "artfully pleaded"—is likely to omit facts necessary for the court to determine the true nature of the complaint.

*Id., citing Schroeder v. Trans World Airlines, supra,* 702 F.2d at 191. *Cf.* 14a Wright, Miller & Cooper, *Federal Practice & Procedure* § 3722 at p. 279 (West 1985).

that Section 25524.2 was not in fact preempted, the Supreme Court explicitly rejected the contention that the Atomic Energy Act is "intended to preserve the federal government as the sole regulator of all matters nuclear ..." *Id.*, 461 U.S. at 205, 103 S.Ct. at 1722. This conclusion was derived in part from the explicit language of Section 274(k) of the Act, 42 U.S.C. § 2021(k), which provides:

Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protections against radiation hazards.

In interpreting this Section, the Court noted that

Congress, by permitting regulation "for purposes other than protection against radiation hazards" underscored the distinction.... between the spheres of activity left respectively to the federal government and the states.

*Id.*, 461 U.S. at 210, 103 S.Ct. at 1725. The "sphere of activity" addressed in *Pacific Gas & Electric Co.* was the traditional province of state regulation of "the generation of electricity itself, [and] the economic question of whether a particular plant should be built." *Id.*, 461 at 207, 103 S.Ct. at 1724. In its determination that nothing in the Act supplanted these state concerns, the Court observed:

[A]s we view the issue, Congress, in passing the 1954 Act and in subsequently amending it, intended that the federal government should regulate radiological safety aspects involved in the construction and operation of a nuclear plant, but that the States retain their traditional responsibility in the field of regulating electrical utilities for determining questions of need, reliability, cost and other related state concerns.

*Id.*, 461 U.S. at 205, 103 S.Ct. at 1723; *see also id.*, 461 U.S. at 208 and n. 19, 103 S.Ct. at 1724 and n. 19.

Because what concerns this Court in the case at bar is not *per se* "state power over the production of electricity," *id.*, 461 U.S. at 208, 103 S.Ct. at 1724, but rather the propriety of state supervision of the employment relationships of those engaged in assuring that production, the explicit pronouncements of *Pacific Gas & Electric Co.* are of perhaps less relevance than the general orientation which may be abstracted from the reasoning of the case. Together with *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443, *Pacific Gas & Electric Co.* is evidence of the Supreme Court's growing approbation of state involvement in the nuclear field in areas other than radiological safety.

 In *Silkwood* the Court reinstated an award of punitive damages—stricken by the Tenth Circuit Court of Appeals on the grounds of federal preemption, *see Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 922–23 (10th Cir.1981)—to the estate of a decedent who, prior to her death, had been contaminated by plutonium at defendant's nuclear fabrication plant. The Court rejected the defense argument that the damages award constituted impermissible *de facto* regulation of nuclear power safety, inferring that "Congress assumed that traditional principles of state tort law would apply with full force unless they were expressly supplanted" by federal statutes. *Silkwood, supra,* 464 U.S. at ——, 104 S.Ct. at 625. In determining that available state tort remedies were not preempted by the federal statutory scheme, the Court remarked on the appropriate focus of inquiry in nuclear tort claims:

[I]nsofar as damages for radiation injuries are concerned, preemption should not be judged on the basis that the federal government has so completely occupied the field of safety that state remedies are foreclosed but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law.

*Id.*, 464 U.S. at ——, 104 S.Ct. at 626. Read in conjunction with the previously quoted language from *Pacific Gas & Electric Co.*, this statement puts to rest the shibboleth of automatic federal preemption

of "all matters nuclear," and is further indication of the Court's acknowledgement of legitimate state concerns in the nuclear energy area. As *Silkwood* makes clear, questions involving nuclear power exist in at least two parallel yet complementary dimensions: one, the domain of radiological safety, in which federal law occupies the field; another—whose boundaries are not yet fully defined—in which independent state law protections may properly operate. In ruling on whether a state law claim arising out of the nuclear area is in fact preempted the spirit of the Supreme Court's declarations must therefore be considered, since the ambit of permissible state involvement is still in the process of formulation. A further observation in *Silkwood* furnishes some guidance in this regard:

> No doubt there is tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a state may nevertheless award damages based on its own law of liability. But as we understand what was done over the years in the legislation concerning nuclear energy, Congress intended to stand by both concepts and to tolerate whatever tension there was between them. We can do no less. It may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept.

*Id.*, 464 U.S. at ——, 104 S.Ct. at 625–26. The crucial distinction, then, is between state regulation of radiological safety, fore-closed by federal law, and regulation of other aspects of nuclear power grounded in legitimate state policy or law. In the absence of a congressional enactment to the contrary, it appears that where there is neither irreconcilable conflict nor frustration of objective caused by the concurrent existence of federal regulations and state protections, the latter are not subject to automatic invalidation. It is therefore insufficient for a defendant to rest on the naked assertion that a particular claim is preempted; rather, it must be specifically demonstrated that the claim impacts on the federal concerns regarding nuclear safety. Conversely, a plaintiff seeking to withstand the charge of preemption must satisfy the court that the claim implicates nothing more than the non-safety, economic aspects of nuclear power, and that there is no substantial clash between the purposes and effects of the federal regulation and the challenged protections accorded him by state law.

Here, Bechtel submits that plaintiff's third cause of action must necessarily be preempted because "the dominant federal interest in nuclear power safety precludes enforcement any [sic] 'traditional' state law cause of action which purports to regulate the safety of privately owned nuclear power plants ..." Dft's Opp., at 12:7–10. The question presented to the Court is therefore whether, under the reasoning of *Pacific Gas & Electric Co.* and *Silkwood*, Stokes' claim for wrongful discharge either purportedly or in fact is directed at regulation of nuclear power plant safety.

■ Facially, this cause of action complains of plaintiff's discharge in violation of "fundamental principles of state public policy." Compl., ¶ 17, at 6:1–2.[4] Because the

---

**4.** In pertinent part, the third cause of action reads as follows:

> 17. The defendants' termination of plaintiffs' [sic] employment on false, arbitrary, and illegal grounds, without good cause and in violation of said employment agreement, violated fundamental principles of state public policy. Plaintiff was discharged by the defendants because he performed his job responsibilities and/or made efforts to assure nuclear power safety at the Diablo Canyon Nuclear Power Plant in California, and re-fused to suppress information about quality assurance deficiencies at the Diablo Canyon Nuclear Power Plant.

The Court does not read the reference to plaintiff's "efforts to assure nuclear power safety" as bringing the third cause of action within the scope of federal radiological safety regulations. Plaintiff's termination was purportedly a result of his doing his job, and while the job itself may have been directed at implementing federal safety standards, Stokes' separation from it is a matter of California wrongful discharge law.

claim is set against the background of alleged quality assurance deficiencies at Diablo Canyon, the question ineluctably arises as to what "public policy" is involved: a postulated state policy respecting nuclear safety or—as plaintiff insists—California's clearly announced policy of ensuring .the continued employment and job security of its citizens, see Cal.Govt.Code § 15900, as amended (1969), Cal.Govt.Code §§ 15905, 15906 (1984), and in advancing the state's economic productivity through the promotion of the nuclear industry, see Cal. Health & Safety Code § 25710 (1971). The Court believes that latter is the correct view. A consideration of the third cause of action discloses nothing, in either its express language or the theory upon which the claim is grounded, to persuade the Court that plaintiff is seeking to enforce anything other than his right not to be unlawfully fired, or once so fired, to obtain appropriate redress from the courts of this state. Stokes pleads only that his conduct with reference to the design and quality of the Diablo Canyon pipe systems eventuated in his termination—he is not suing to compel defendants to comply with any nuclear safety statute, and if involved at all any such statute would be addressed only peripherally in trial of his claims.[5] The third cause of action, in essence, requires an examination of the employer-employee relationship, not the vast anfractuosities of nuclear safety regulation. That plaintiff's claim, if ultimately successful, could serve to reinforce California's policy concerning job security is a "regulatory" consequence which does not "frustrate the objectives of the federal law," Silkwood, supra, 464 U.S. at ——, 104 S.Ct. at 626, being little more than a product of the previously addressed "tension" which Congress appears prepared to tolerate. Id.; see discussion supra at 735–736.

Because Bechtel has not shown that this third cause of action represents an attempt, however oblique, to promote radiological safety, the Court cannot find the claim preempted by federal nuclear regulatory law.[6] The first branch of the Hunter test is therefore unmet.[7]

5. For much the same reason, the Court also rejects defendants' secondary argument in support of federal jurisdiction, i.e., that federal law respecting nuclear safety is an "essential element" of Stokes' claims. This argument is in fact bipartite. Bechtel first avers that plaintiff must necessarily allege that defendants violated federal quality assurance and design regulations in order to establish the impropriety of his termination; second, that relevant federal statutes governing nuclear power safety are a hidden desideratum of Stokes' third cause of action.

In support of the first branch of this argument, defendants rely principally on County of Suffolk v. Long Island Lighting Co., 549 F.Supp. 1250 (E.D.N.Y.1982) for the proposition that state law claims involving the interpretation of nuclear regulations are removable. As far as it goes, this construction of County of Suffolk is correct. However, in that case, the County brought a state action against a utility which owned a nuclear power station alleging, inter alia, serious design and construction deficiencies. In County of Suffolk, therefore, the questions involving federal nuclear energy regulations were at the core of plaintiff's case, forming the very essence of the complaint, not, as here, merely its background.

Defendants' position on the second branch of the argument appears little more than a variation on the preemption theme, and as such is fully addressed in this section of the text. This argument turns, once again, on Bechtel's blinkered insistence that the only public policy conceivably implicated in this action is the federal policy regarding nuclear safety. As the textual analysis indicates, the Court finds this theory unconvincing in light of Pacific Gas & Electric Co. and Silkwood. Further, because of the explicit preemption situation presented in Olguin, supra —implicating the Labor Management Relations Act, 29 U.S.C. § 185, and the Federal Mine Safety & Health Act, 30 U.S.C. §§ 801 et seq.—the Court cannot concur in defendants' reading of that case.

6. The Court notes in passing the Opposition Memorandum filed herein by defendant Pacific Gas & Electric, which by its own admission does not address the law of removal jurisdiction but merely asserts a number of self-styled policy reasons why the Court should find Stokes' claim preempted. The Court is frankly perplexed by this curious document, which, reading more like an amicus curiae brief than the memorandum of a party litigant, offers not a single principle of law upon which the Court might base its resolution of the issues presented by plaintiff's motion to remand.

7. Both in their moving papers and at oral argument, defendants placed considerable emphasis

## (B) The Federal Remedy

While the *Hunter* artful pleading analysis mandates that the Court go no farther than the present finding of no preemption under the general nuclear regulatory law in ruling on plaintiff's motion to remand, it is defendants' further argument that Section 210 of the Energy Reorganization Act, 42 U.S.C. § 5851, explicitly preempts Stokes' wrongful discharge claims. The Court, however, is unpersuaded that this Section constitutes the panacea for plaintiff's alleged damages that defendants advocate.

This Section, the "Employee Protection" or "whistle-blower" provision of the Act, was added in 1978. Pub.L. 95–601, § 10, Nov. 6, 1978, 92 Stat. 2951. In substance, the statute provides a remedy for a nuclear employee who has been discharged or otherwise discriminated against because he has testified, given evidence, or brought suit under the Energy Reorganization or Atomic Energy Acts, or has engaged in "any other action to carry out the purposes" of either Act. 42 U.S.C. § 5851(a)(3).[8] Section 210 is enforced by the Secretary of Labor who, upon finding that a violation has occurred, may take any affirmative action necessary to abate the violation, including reinstatement of the employee, back pay, compensatory damages, and attorney's fees and costs. 42 U.S.C. § 5851(b)(2). Upon a showing of noncompliance, the Secretary is further empowered to bring a civil action in the district court for the district in which the violation occurred, and that court is invested with jurisdiction to fashion an appropriate remedy, including injunctive relief, and

on *Garibaldi, supra.* Their assurance that *Garibaldi* controls the instant situation is unpersuasive. Apart from the fact that the Court there explicitly refused to find preemption in a whistleblower situation, the Ninth Circuit's analysis of California's wrongful termination law is not inconsistent with the present discussion. Defendants place special emphasis on the following language from that decision:

> A claim grounded in state law for wrongful termination for public policy reasons ... does not alter the economic relationship between the employer and employee. The remedy is in *tort*, distinct from any contractual remedy an employee might have.... It furthers the state's interest in protecting the general public—an interest which transcends the employment relationship.

*Id.*, 726 F.2d at 1375 (emphasis in original) (citation omitted). As the context makes clear, the quoted language was addressed to a distinction between California's wrongful termination law based on public policy, and the state law of wrongful discharge grounded on an express or implied contractual term of employment. *Compare Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980) *with Cleary v. American Airlines,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980).

Defendants, however, disregard this framework, preferring to see *Garibaldi* as supporting their theory that the alleged wrongful discharge pled by Stokes has nothing to do with plaintiff's former employment at Diablo Canyon but rather derives from California's hypothetical "public policy" respecting nuclear safety. Dft's Opp., at 13:1–14:12. This is so, they argue, because "the

California courts have specifically rejected the notion that there is a state public policy in favor of job stability." Dft's Opp. at 13:26–14:1, *citing Shapiro v. Wells Fargo Realty Advisors,* 152 Cal. App.3d 467, 473, 199 Cal.Rptr. 613 (1984). Leaving aside the "permanent jobs" language of Cal.Govt.Code § 15906, this argument must fail. Crucial to *Shapiro,* was plaintiffs' status as an "at-will" employee, *Shapiro, supra,* 152 Cal. App.3d at 474–75, 479, 482, 199 Cal.Rptr. at 616–17, 619, 621. Indeed, Shapiro made no attempt to rebut this characterization of his status. Hereby, by contrast, Stokes has specifically pled the existence of a contract of employment having as one of its terms the proviso that he would not be discharged absent just cause. Complaint, ¶ 6. It is the alleged breach of this contract from which many of his claims flow, not the violation of a wholly fictitious state policy advancing the safety of nuclear reactors.

The Court therefore declines to follow this reading of *Garibaldi.* The Ninth Circuit's recent discussion of that case, *see Aragon v. Federated Dept. Stores, Inc.,* 750 F.2d 1447, 1457 (9th Cir. 1985), further convinces the Court that defendants' err in citing *Garibaldi* for the proposition they assert.

**8.** It is unclear from the present record precisely what action plaintiff undertook with respect to the alleged quality assurance deficiencies at Diablo Canyon. There is no showing that he has testified or given evidence in any proceeding within the meaning of 42 U.S.C. § 5851, and it is entirely possible that his "whistleblowing" was conducted wholly through internal channels.

compensatory and exemplary damages.[9] 42 U.S.C. § 5851(d). This Section is also enforced by the Nuclear Regulatory Commission; in order to complement the Secretary's program, the Commission is granted the authority to sanction a noncomplying employer by denial or revocation of its operating license, imposition of a civil penalty, or other appropriate enforcement action. *See* 10 C.F.R. § 50.

 It is at once evident that the statute furnishes a comprehensive scheme of relief potentially available to an aggrieved nuclear employee. From this incontestible point, however, defendants go on to argue that the remedy provided by Section 210 is "so pervasive as to make reasonable the inference that Congress left no room to supplement it." Dft's Opp., at 16:6–8. This argument, however, overlooks the fact that both the explicit language and the legislative history of the Section strongly suggest that, in amending the Energy Reorganization Act, Congress intended to confer a remedy which was elective, not preemptive. The provision of the statute respecting an employee's filing of a complaint states in pertinent part that:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of subsection (a) of this section *may*, within thirty days after such violation occurs, file ... a complaint with the Secretary of Labor ... alleging such discharge or discrimination.

42 U.S.C. § 5851(b)(1) (emphasis added). The permissive character of the statutory remedy is underscored by a review of the relevant congressional reports. Senate Report 95–848 states:

> This section offers protection to employees who believe they have been fired or discriminated against as a result of the

fact that they have testified, given evidence, or brought suit under [the Energy Reorganization Act] or the Atomic Energy Act. The employee *may* apply to the Secretary of Labor for review of his case....

> Under this section, employees and union officials *could* help assure that employers do not violate requirements of the Atomic Energy Act....

> This section would prohibit any firing or discrimination and would provide *an* administrative procedure under which the employee or his representative *could* seek redress for any violation of this prohibition.

*Id.*, at p. 29, 1978 U.S.Code Cong. & Admin. News, 7303–7304 (emphasis added). To furnish "an administrative procedure" for redress does not dictate foreclosure of an employee's traditional recourse to the courts, and nothing in the quoted language supports defendants' theory that Congress intended such foreclosure. While the statutory scheme is indeed comprehensive, it cannot therefore be deemed "pervasive," since it was apparently the understanding of Congress that Section 210 was meant to create a new avenue of relief where remedies previously available had appeared insufficient. Indeed, the Section in a sense appears less concerned with the rights of individual employees than with enacting a statutory mechanism for sanctioning employers who fail to comply with applicable federal nuclear regulations. In any case, it is clear to the Court that Section 210 was intended to supplement, not to supplant, traditionally available forms of relief under state law, and that nothing in either the language of the statute or its legislative history establishes that Congress meant to provide *the* remedy for such reprisals— only that it sought to furnish *a* remedy. In

---

**9.** Defendants direct the Court's attention to a prior action maintained by plaintiff under Section 210, *Stokes v. PG & E, Bechtel Power Corp.,* 84–ERA–6. They further inform the Court that plaintiff has suffered an adverse summary judgment in that action, and posit from this that "Stokes must concede the applicability of § 210 to his case...." Dft's Opp., at 6:6–7. This argument appears little better than casuistry. If anything, defendants' success on the summary judgment motion in the administrative proceeding suggests that Section 210 is in fact *inapplicable* to Stokes' case, and that he is therefore seeking to litigate his claims for relief in the only forum presently open to him, i.e., state court.

view of the Supreme Court's broad acknowledgement of the propriety of state involvement in certain areas of nuclear power announced in *Pacific Gas & Electric Co.* and *Silkwood*, the Court is unable to accept the thesis that the enactment of Section 210 requires the invalidation of all preexisting state law remedies for aggrieved employees involved in the field of nuclear power. For this additional reason, then, the Court finds that plaintiff's third cause of action is not preempted by federal nuclear safety law.[10]

### CONCLUSION

It appears to the Court that defendants have failed to show that the situation at bar meets the *Hunter* requirements of federal jurisdiction under the artful pleading doctrine. They have demonstrated neither the exclusivity of federal law, nor that such law provides the only proper remedy for the wrongs alleged by Stokes. *Hunter, supra,* 746 F.2d at 642. The present case, therefore, does not entail such "exceptional circumstances" as would warrant invocation of the doctrine, *see Salveson, supra,* 731 F.2d at 1427; *see also* discussion *supra* at 735–736. Because of this, defendants have not met their burden of establishing federal jurisdiction under the removal statutes, and the Court concludes that such jurisdiction does not exist.

In view of which, and for good cause shown,

IT IS HEREBY ORDERED:

(1) That plaintiff's motion to remand is GRANTED and this cause is hereby REMANDED to the California Superior Court for the County of San Francisco;

(2) Each party shall bear his own costs.

**10.** On June 13, 1983, this Court received an *ex parte* communication from counsel for defendants, alerting it to a recent decision of the United States District Court for the Central District of California, *Herrmann v. H.P. Foley Co.,* No. 85–2246 RG (Bx), dated May 20, 1985.

The Court has not ordered further briefing on the present motion to remand. Nonetheless, even the briefest review of *Herrmann* reveals the inapplicability of that case to the proceedings here. The precise holding of *Herrmann* was that the District Court did not have subject matter jurisdiction of plaintiff's claims under Section 210 on the grounds that "exclusive jurisdiction [under that Section] is vested in the Secretary of Labor...." *Id.,* slip op. at 2. This is plainly not the issue presented in the case before this Court. It is apparent that defendants are further heartened by dicta on page 3 of the slip opinion, in which the Court seemingly prohibits the assertion of "common law remedies for employees who believe that they have

been discriminated against for making safety complaints...." *Id.* This the entire "analysis" devoted to the questions implicated in the case at bar, four lines of lagniappe in an attorney-drafted order spanning three pages.

*Herrmann* is further distinguishable by the fact that the Central District explicitly found plaintiff's Second and Third Causes of Action to arise under Section 210. An examination of Herrmann's complaint bears out this interpretation. *See* Complaint, ¶¶ 11, 15 ("[t]he public policy and statutes of *the United States Government* and the State of California mandate the construction of a safe nuclear power plant," *id.,* at ¶ 11; "[t]he objectives underlying the policy of both State *and Federal Governments* is that nuclear power plants will be constructed in a safe fashion," *id.* at ¶ 15) (emphasis added). Here, by contrast, Stokes makes no such reference to federal policy, and the Court does not find that such policy is implicated by his Third Cause of Action.