**James Ellis SNOW, Plaintiff,**

v.

**BECHTEL CONSTRUCTION INC., Jerry Lilly, Jim Delaporte, Carl Gantner, David Cathcart, et al., Defendants.**

No. CV–85–4292–AHS.

United States District Court, C.D. of California.

Nov. 19, 1986.

---

Matthew B.F. Biren, Los Angeles, Cal., for plaintiff.

Walter A. Stringfellow, Donald A. Newman, Thelen, Marrin, Johnson & Bridges, Los Angeles, Cal., for defendants.

STOTLER, District Judge.

Plaintiff James Snow ("Snow") originally filed his complaint for wrongful termination and for violation of his right to freedom of speech pursuant to Article I, section 2 of the California Constitution in the Orange County Superior Court on May 16, 1985. Defendant Bechtel Construction Inc. ("Bechtel") subsequently removed this action on June 28, 1985 pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) and the Atomic Energy Act, 42 U.S.C. § 2011 et seq.

This matter is before the Court upon the motion of defendant Bechtel for judgment on the pleadings. Since Bechtel introduces facts outside of the pleadings, the Court treats the motion as one for summary judgment. Defendant's papers notified plaintiff of such alternative motion treatment. Rule 12(b) and Rule 56 of the Federal Rules of Civil Procedure.

Bechtel contends that Snow's claims are preempted by the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011 et seq., and section 210 of the Energy Reorganization Act of 1974 as amended, 42 U.S.C. § 5851. Alternatively, defendant argues that Snow's claims are preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Bechtel further maintains that plaintiff's second cause of action should be dismissed because plaintiff fails to establish sufficient facts to show that Bechtel's activities constitute state action.

Defendant moves the Court to take judicial notice that Snow's place of employment, the San Onofre Nuclear Generating Station ("SONGS"), rests on a federal enclave over which the federal government has exclusive jurisdiction. Bechtel then asserts that plaintiff's reliance on state

wrongful termination law is inappropriate since only federal law and consistent preexisting state law govern federal enclaves.

By this Order the Court grants Bechtel's motion for summary judgment, concluding that Snow's wrongful termination action is preempted in part by the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011 et seq. and section 210 of the Energy Reorganization Act of 1974 as amended, 42 U.S.C. § 5851, and in part by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Summary judgment is also granted as to Snow's freedom of speech claim under the California Constitution because Snow fails to show sufficient facts establishing that Bechtel's activities constitute state action. Bechtel's request for judicial notice is granted and the Court further dismisses Snow's wrongful termination claim because federal enclaves are governed exclusively by federal law and consistent preexisting state law.

## FACTS

For purposes of this motion for summary judgment, plaintiff Snow's version of the facts shall be accepted as true. Snow was formerly employed by Bechtel as a carpenter foreman at SONGS. SONGS is a nuclear power plant operated by the Southern California Edison Company ("Edison") under a license issued by the Nuclear Regulatory Commission ("NRC"). Bechtel served as a contractor to Edison at SONGS. Throughout his employment by Bechtel at SONGS, plaintiff was a member of the San Diego County District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America AFL–CIO. The terms and conditions of his employment were governed by a collective bargaining agreement, the General Presidents' Project Maintenance Agreement ("GPPMA"). The GPPMA permitted Bechtel to terminate the employment of its employees in reductions in force and for just cause. It also contained an exclusive grievance and arbitration procedure.

The complaint alleges two claims. The first cause of action is for wrongful termination with respect to plaintiff's termination of employment on November 27, 1984. On July 4 and 5, 1984, Snow reported to his immediate supervisors that employees of Bechtel were ingesting narcotics on the job. Snow alleges that he was terminated from his employment on July 6, 1984, because of these reports. Bechtel contends that Snow was fired on this occasion because he failed to supervise properly. Snow pursued the grievance procedure under the GPPMA collective bargaining agreement and was rehired as a journeymen carpenter on September 4, 1984. On or about October 25, 1984 Snow reported to Bechtel and to the owner of SONGS that the plant was in violation of established emergency evacuation requirements. On October 30, 1984, Snow sent a telegram to the NRC reporting that SONGS was in violation of its established emergency evacuation requirements in the event of a nuclear accident. On the same day he informed his employer that he would be sending that telegram. On November 27, 1984, Snow was terminated for the stated reason of reduction in force. Pursuant to the terms of the GPPMA agreement Snow, through his union representatives, filed a grievance with Bechtel regarding this termination. Snow contends, in his first cause of action, that his termination on November 27, 1984, was disguised as a lay off in order to conceal the fact that he was terminated because he reported two flagrant safety violations at SONGS to the appropriate authorities. He claims his termination was wrongful as it was in violation of various public policies of the State of California, including California's commitment to protect the people of the State from unnecessary exposure to radiation and an employer's obligation to provide an employee with a safe place to work.

In Snow's second cause of action, he claims that his reports of the two safety violations at SONGS constitute exercises of his right to freedom of speech under the California Constitution. Plaintiff alleges that his termination was wrongful as it

violated his right to free speech protected by the Constitution.

## DISCUSSION

The Court must first consider whether plaintiff's action is barred because preempted by either of two schemes: (1) the federal nuclear regulatory scheme, and (2) section 301 of the Labor Management Relations Act.

### 1. *The Federal Nuclear Regulatory Scheme.*

■ The Atomic Energy Act of 1954, 42 U.S.C. §§ 2011 et seq., ("AEA") comprehensively regulates the field of nuclear energy. The AEA provides for federal and state cooperation with respect to control of radiation hazards and other aspects of the regulation of nuclear materials. 42 U.S.C. § 2021. However, the Nuclear Regulatory Commission retains "authority and responsibility with respect to regulation of—(1) the construction and operation of any production or utilization facility, ..." 42 U.S.C. § 2021(c). The federal government thus maintains "complete control of the safety and 'nuclear' aspects of energy generation...." *Pacific Gas & Electric Company v. Energy Resources & Development Commission,* 461 U.S. 190, 212, 103 S.Ct. 1713, 1726, 75 L.Ed.2d 752 (1983). The United States Supreme Court thus indicates that any state public policy regarding nuclear safety is preempted by the federal regulatory scheme:

> "State safety regulation is not preempted only when it conflicts with federal law. Rather, the Federal Government has occupied the entire field of nuclear safety concerns, except the limited power expressly ceded to the States. When the Federal Government completely occupies a given field or an identifiable portion of it, as it has done here, the test of preemption is whether 'the matter on which the State asserts the right to act is in any way regulated by the Federal Act.'"

*Id.* at 212–213, 103 S.Ct. at 1726–1727 (footnote and citation omitted).

Section 210 of the Energy Reorganization Act of 1974 as amended, 42 U.S.C. § 5851, specifically provides a remedy for an employee who believes he has been discharged or otherwise discriminated against for making safety complaints concerning the construction or operation of nuclear power plants. Section 5851 provides that no employer may "discharge ... or otherwise discriminate" against any employee because the employee has testified, given evidence or brought suit under the AEA, or engaged in "any other action to carry out the purposes" of the AEA.

It further provides that any employee who believes he has been discharged or otherwise discriminated against may file a complaint with the Secretary of Labor within thirty days after such violation occurs. Within thirty days of receipt of such a complaint, the Secretary must conduct an investigation and notify the individuals involved of any results. Within ninety days of receipt of a complaint, the Secretary must either deny it or order the offending employer to take remedial action. Such action may consist of reinstatement, compensation, and payment of compensatory damages. This scheme includes the right to have the Secretary's decision reviewed by a United States Court of Appeals. In addition, any individual who fails to comply with the Secretary's order would be subject to civil enforcement of the order. The above scheme applies to individuals who are allegedly discharged for reporting nuclear safety violations to the NRC or to internal supervisors. *See DeFord v. Secretary of Labor,* 700 F.2d 281, 286 (6th Cir. 1983); *Consolidated Edison Co. of New York, Inc. v. Donovan,* 673 F.2d 61 (2d Cir.1982).

The "whistleblower" provision of § 5851 was patterned after another federal statute, the Mine Safety and Health Act, 30 U.S.C. §§ 820 et seq., S.Rep. No. 95–848, 95th Cong., 2nd Sess. at 29, 1978 U.S.Code Cong. & Admin.News at 7303. The two Acts "share a broad, remedial purpose of protecting workers from retaliation based on their concerns for safety and quality." *Mackowiak v. University Nuclear Sys-*

*tems, Inc.*, 735 F.2d 1159, 1163 (9th Cir. 1984). Subsequent to identifying this similarity between the two Acts, the Ninth Circuit held that the whistleblower provision in the Mine Safety and Health Act was an exclusive remedy that preempted any state action. *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1475 (9th Cir.1984). The Ninth Circuit has not specifically addressed the exclusivity of the remedy contained in § 5851. *Olguin*, however, is persuasive authority for holding here that Snow's action is preempted by § 5851.

Plaintiff relies on *Stokes v. Bechtel North American Power Corp.*, 614 F.Supp. 732 (N.D.Cal.1985), which indicates that the Energy Reorganization Act's whistleblower provision is *not* an exclusive remedy. *Stokes* held that § 5851 did not supplant, but merely supplemented preexisting state law remedies for aggrieved employees involved in the field of nuclear power. It characterized § 5851 as a regulation of the employment relationship rather than safety. As previously noted, the federal nuclear regulatory scheme only specifically preempts actions based upon safety concerns. *Stokes* held:

"[A] plaintiff seeking to withstand the charge of preemption must satisfy the court that the claim implicates nothing more than non-safety, economic aspects of nuclear power, and that there is no substantial clash between the purposes and effects of the federal regulation and the challenged protections accorded him by state law.... The question presented to the Court is therefore ... [whether] Stokes' claim for wrongful discharge either purportedly or in fact is directed at regulation of nuclear power plant safety.... Stokes pleads only that his conduct ... eventuated his termination—he is not suing to compel defendants to comply with any nuclear safety statute, and if involved at all such statute would be addressed only peripherally in trial of his claims.... [The] cause of action, in essence, requires an examination of the employer-employee relationship, not the

vast anfractuosities of nuclear safety regulation."

*Id.* at 742.

*Stokes* further suggests that the permissive language of § 5851 supports the contention that the federal remedy is merely an elective one. For instance, the provisions state that an employee *may* file a complaint with Secretary, *may* apply for review of the decision, and *could* help assure that employers do not violate requirements of the AEA.

However, *Stokes* appears to give no consideration to the legislative history of § 5851, which as mentioned, was patterned after the parallel provision of the Mine Safety and Health Act. As earlier noted, the Ninth Circuit recognizes that the Energy Reorganization Act and the Mine Safety and Health Act have similar purposes. Section § 5851 is indeed cast in permissive terms, but so is the Mine Safety and Health Act. The permissive language in the latter Act did not preclude the Ninth Circuit from holding that the relevant whistleblower provision was an exclusive federal remedy. *Olguin*, 740 F.2d 1468. As defendant Bechtel points out, it would make little sense to *require* an aggrieved employee to file a complaint. In addition, Congress could hardly provide that whistleblowing actually *would* ensure that employers would not violate safety regulations. As suggested by *Olguin*, the terms "may" and "could" are not at all inconsistent with the exclusivity of the federal remedy.

The Court concludes that *Stokes* should not govern this case and respectfully declines to follow it. Instead, this Court concludes that the legislative history of § 5851 and the decision in *Olguin* indicate that primarily safety concerns were being addressed by the provisions of § 5851. Preservation of a complaining employee's position within the offending facility is a secondary, yet essential corollary of such a safety scheme.

Snow also relies upon *Stokes'* suggestion that even if a nuclear safety issue is involved, state action is not necessarily preempted. The Supreme Court has indi-

cated that some safety-related personal injury actions are not preempted by § 5851. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). In *Silkwood*, plaintiff, father of decedent Silkwood, sought relief under state tort law for radiation injuries suffered by his daughter at a Kerr-McGee nuclear power plant. Though the Court held that plaintiff could pursue a state tort remedy, including punitive damages, it explicitly restricted its holding to radiation injuries.

In the current case, the alleged wrong is retaliatory termination, not personal injury. The *Silkwood* holding is clearly distinguishable and does not require a conclusion that preemption is inappropriate here. Snow complains directly of a discharge on account of his efforts to carry out the purposes of the AEA. To the extent that Snow claims he was wrongfully terminated on November 27, 1984, because he complained about safety violations, his action is preempted by § 5851.

This action was properly removed to federal court and is dismissed for lack of subject matter jurisdiction since the matter is within the exclusive province of the Secretary of Labor.

2. *The Labor Management Relations Act.*

■ Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA") preempts state wrongful termination actions when they are brought by employees whose terms and conditions of employment are governed by a collective bargaining agreement which requires just cause for termination and provides grievance and arbitration procedures. Plaintiff Snow's GPPMA contract constitutes such an agreement. The United States Supreme Court has indicated that certain tort claims which are rooted in a collective bargaining agreement are also preempted by the LMRA. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

Snow contends that the LMRA does not preempt this action because it is based upon a state policy that is totally separate from his collective bargaining agreement. Snow relies on a purported state policy regarding nuclear safety rather than a labor policy regarding continued employment and job security. He cites *Garabaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367 (9th Cir.1984), *cert. den.,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839, for the proposition that wrongful termination actions based upon a state policy separate from a collective bargaining agreement are not preempted by the LMRA.

In *Garabaldi*, plaintiff milk truck driver claimed he was fired in retaliation for reporting a health and safety violation. The Ninth Circuit indicated that Garabaldi's whistleblowing served the state public policy of protecting the health and well-being of citizens. The promotion of state policy rather than the regulation of the employment relationship provided the justification for that wrongful termination action.

In the current case, Snow must characterize his action as one based upon an public safety concern and/or as one based upon an employment-related concern. If he chooses the former, his action is preempted by the Energy Reorganization Act. Snow suggests that he relies upon some separate state public policy and that *Garabaldi* permits him to bring his wrongful termination action. However, as discussed previously, the Supreme Court does not recognize such a separate state policy in the nuclear safety area. *Pacific Gas & Electric Co. v. Energy Resources and Development Commission,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

If Snow characterizes his action as one based upon an employment-related concern, it is preempted by the LMRA. Snow contends that his November 27, 1984 termination constituted retaliation for two series of complaints: the July 4, and 5, 1984 complaints regarding employee narcotics use and the October 25, and 30, 1984 complaints to his employers and the NRC regarding emergency evacuation procedures. After Snow was terminated on July 6, 1984, he pursued his grievance through the

**1520**

GPPMA collective bargaining procedures and was subsequently rehired as a journeyman carpenter. Snow filed a similar grievance upon his November 27, 1984 termination. He also filed this lawsuit. Though Snow currently characterizes both grievances as relating to safety concerns, he has already utilized the procedures provided under the GPPMA collective bargaining agreement for labor disputes. Consequently, to the degree that § 5851 does not preempt Snow's wrongful termination action, the LMRA does.

It should be observed that even if this Court were to rely upon the *Stokes* case, it would still rule that this action is preempted. *Stokes* only held that a whistleblower action was not preempted by the Energy Reorganization Act. That court did not consider the LMRA because no collective bargaining agreement was involved. *Stokes* characterized the action as one concerned with continued employment and job security. In *Olguin,* the Ninth Circuit indicated that such interests were preempted by the LMRA:

> "Olguin's alleged right not to be dismissed without just cause is essentially equivalent to a right created by the collective bargaining agreement. It is apparent that the true nature of Olguin's wrongful discharge complaint concerns the terms and conditions of employment as they are set out in the collective bargaining agreement. Olguin cannot rely on some other agreement or on state law protections of job security: his complaint is in fact a section 301 suit on the bargaining agreement."

740 F.2d at 1474–75.

Regardless of the theory Snow invokes, his wrongful termination action is preempted by federal law. The Court thus dismisses Snow's wrongful termination action for lack of subject matter jurisdiction because the Secretary of Labor has exclusive authority over the field of nuclear safety, and Snow is confined to pursuing his labor grievances through the channels provided in his GPPMA collective bargaining agreement.

3. *State Free Speech Claim*

■ The California Constitution, Article I, section 2, provides in pertinent part that "[e]very person may freely speak, write and publish his or her sentiments on all subjects ..." Assuming the state provision should receive the same analysis as its federal counterpart, private employers are generally not subject to the First Amendment. *Los Angeles Teachers Union v. Los Angeles City Board of Education,* 71 Cal.2d 551, 564–65, 78 Cal.Rptr. 723, 455 P.2d 827 (1969). Though this precedent refers to the United States Constitution, Snow suggests no reason why the principle would not apply with equal force to a state constitutional free speech claim.

Snow argues that the extensive federal regulation of the nuclear energy field indicates that Bechtel is involved in a public function which implicates state action. Plaintiff provides no authority for his position. Bechtel, however, relies upon a United States Supreme Court decision which suggests that no state action is involved in the current case. *Jackson v. Metropolitan Edison Company,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In *Jackson,* the Court considered whether or not a privately owned utility should be required to comply with the due process requirements of the Fourteenth Amendment. The Court found that the utility's actions did not rise to the level of state action even though it was heavily regulated, enjoyed at least a partial monopoly in providing electrical service, and provided an essential public service. The Court held, therefore, that the privately-owned utility was not subject to the requirements of the Fourteenth Amendment.

While *Jackson* refers to the Fourteenth Amendment, plaintiff Snow suggests no reason why the analysis would not apply to a First Amendment claim, as well. Since Snow fails to show by sufficient evidence that Bechtel should be subject to the free speech requirements of the California Constitution, the second cause of action is dismissed.

An alternative ground for dismissing this state free speech claim is its preemption by § 5851. Bechtel argues that the gravamen of Snow's free speech claim is the vindication of Snow's whistleblower right to report safety violations. While the Court finds this argument to be persuasive, Bechtel provides no authority for this proposition. Thus since the Court dismisses this claim because the facts do not rise to the level of state action, it need not determine whether § 5851 in fact preempts such a state free speech claim.

### 4. *Federal Enclave Issues.*

 As an alternative ground for dismissal of this complaint, Bechtel asserts that this Court has exclusive jurisdiction over the action because all pertinent events occurred on a federal enclave. Bechtel sets forth sufficient facts to prove that the SONGS is indeed situated upon a federal enclave. Plaintiff concedes this point. The parties argue over the applicability of state wrongful termination law to that enclave. Only federal law applies on a federal enclave under exclusive federal jurisdiction (except to the extent Congress has otherwise provided). *Pacific Coast Dairy v. Department of Agriculture of California,* 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761 (1943). However, in order to ensure that no such area is left without a developed legal system for private rights, preexisting state law not inconsistent with federal policy becomes federal law and remains in existence until altered by national legislation. *Id.* at 294, 63 S.Ct. at 630.

Bechtel contends that Snow's wrongful termination action relies upon state law which was enacted well after the land became a federal enclave. Therefore, Bechtel concludes Snow's action is precluded. Further, Bechtel asserts that the regulatory schemes discussed earlier so pervade the area of Snow's complaint that even if the wrongful termination action may be viewed as preexisting the enclave classification, it would still be preempted.

 Snow attempts to establish that the wrongful termination action preexisted the land's enclave status. Snow's effort is unsuccessful because it is unsupported by persuasive authority. He renews his contention that the wrongful termination action is consistent with the two federal regulatory schemes discussed earlier, and therefore should not be preempted. These arguments have already been rejected.

The Court concludes that Snow's wrongful termination action is also barred because wrongful termination law did not preexist the federal enclave. His wrongful termination action is also inconsistent with the federal law governing that land and therefore has no application to it.

### CONCLUSION

Defendant's motion for summary judgment is granted. The clerk is directed to serve this Opinion and Order Granting Summary Judgment issued this date on all counsel of record by U.S. mail.

IT IS SO ORDERED.