No. 60,443

RICHARD L. CHRISMAN, *Appellant*, v. PHILIPS INDUSTRIES, INC., a/k/a RUSKIN-PAOLA, a Division of Philips Industries, Ruskin Manufacturing Company, *Appellee.*

(751 P.2d 140)

Opinion filed February 29, 1988.

*Elizabeth Kaplan,* of Overland Park, argued the cause, and *James R. Shetlar,* of Overland Park, was with her on the briefs for the appellant.

*Dana M. Harris,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Richard T. Merker,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an interlocutory appeal by the plaintiff, Richard L. Chrisman, from an order of the Miami County District Court granting partial summary judgment in favor of the defendant, Philips Industries, Inc., in this wrongful discharge from employment case. Chief Judge Abbott of the Court of Appeals granted plaintiff's application to take an interlocutory appeal, K.S.A. 1987 Supp. 60-2102(b), and the matter was transferred to this court pursuant to K.S.A. 20-3018.

Chrisman was employed by Philips for approximately six and one-half years at its plant in Paola, Kansas. Plaintiff concedes that at all times he was an employee at will. On October 14, 1982, Philips Industries terminated plaintiff's employment. He brought this action for damages, claiming that his discharge was wrongful. He advanced ten alternative theories. The trial court, ruling on a motion for summary judgment, found that plaintiff's claim for breach of an employment contract would require a factual determination and denied the motion as to that claim. The court sustained the motion as to the remaining nine claims. Plaintiff challenges that ruling on appeal only as to three claims: retaliatory discharge for his considering filing a worker's compensation claim; retaliatory discharge for his refusal to approve defective nuclear industrial products; and promissory estoppel.

When summary judgment is challenged on appeal, this court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Richardson v. Northwest Central Pipeline Co.*, 241 Kan. 752, Syl. ¶ 2, 740 P.2d 1083 (1987). Therefore, and although there are facts in the record favorable to the defendant, we will state those facts most favorable to the plaintiff.

Chrisman claims that on September 21, 1982, while at work, he slipped and twisted his back while he was walking over some sheet metal. The following morning his wife took him to the Miami County Hospital, where he was examined by Dr. Robert Banks. Dr. Banks put him in the hospital. On the following morning, Chrisman claims that he talked over the telephone with one of his superiors, Richard Yarges. He told Yarges that he slipped on some sheet metal. Yarges asked whether Chrisman was going to file a workers' compensation claim, and urged Chrisman to use his personal insurance, telling him that it would be to his best interest not to file a workers' compensation claim. Chrisman says that he responded: "[I]f that's what it took to protect my job, fine." Chrisman did as Yarges told him to do and submitted a claim to his insurance company for a nonwork-related injury. On October 12, Chrisman was released by his doctor and returned to work. Two days later he was fired. On December 22, he filed a workers' compensation claim. He now claims that he was fired for intending to file or thinking about filing a workers' compensation claim.

The first issue is whether a cause of action for retaliatory discharge exists on public policy grounds when an employee,, who has been injured on the job and has expressed an intent to the employer to file a workers' compensation claim, is persuaded by the employer to forego the filing of that claim and is then fired by the employer as a result of the intent to file. Both parties discuss the case of *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981). In *Murphy*, the Court of Appeals recognized that an employee at will is normally terminable at the will of either party. The court, however, carved out an exception to that rule, holding that the discharge of an employee in retaliation for filing a workers' compensation claim is actionable at law and may support an award of both actual and punitive damages. The plaintiff, Murphy, following an on-the-job injury, filed a workers' compensation claim. He was offered further employment on the condition that he withdraw his compensation claim. He claimed that his employment was terminated because of his refusal to withdraw the compensation claim. *Murphy* is distinguishable from the case at bar since Chrisman did not file a claim until approximately two months after he was terminated.

The reasoning in *Murphy*, however, is persuasive. The court said:

"We believe the public policy argument has merit. The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act." 6 Kan. App. 2d at 495-96.

Chrisman contends that the exception carved out in *Murphy* should be extended to the situation here. We believe that argument has merit. To hold otherwise would permit an employer to discharge an employee shortly after an industrial accident and before the employee has filed a workers' compensation claim. To fire an employee because he or she has been injured and intends to file a workers' compensation claim is no less subversive of the purposes of the Workers' Compensation Act, and no less opposed to public policy, than the firing of the employee in retaliation for the actual filing of a claim.

The cases from other jurisdictions cited by industrious counsel are not persuasive, primarily because they are based on the retaliatory discharge statutes of the various jurisdictions. We hold that the exception carved out in *Murphy* should be extended to cover situations such as are claimed in this case, where the employee claims he or she was injured on the job, the employer knew that the employee intended to file a workers' compensation claim, and in retaliation therefor discharged the employee. As we indicated earlier, the facts surrounding this issue are highly controverted, and remain for determination at trial.

The second issue is whether a cause of action for retaliatory discharge exists on public policy grounds for an employee who claims he or she was discharged as a result of the employee's refusal to approve allegedly defective nuclear industrial products. The employer, Philips Industries, produced products which were designed for use in the nuclear industry. Chrisman, as quality control inspector, frequently found deficiencies in products manufactured by the defendant which were being supplied to the nuclear industry. He claims he was discharged based upon his filing of internal deviation reports.

42 U.S.C. § 5851 (1982), a part of the Energy Reorganization Act, provides a remedy for certain employees in nuclear-related facilities who are discharged. The act reads in part:

"Employee protection

"(a) Discrimination against employee

"No employer, including a Commission licensee, an applicant for a Commission license, or a contractor or a subcontractor of a Commission licensee or applicant, may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)—

"(1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter or the Atomic Energy Act of 1954, as amended [42 U.S.C. § 2011 *et seq.*] or a proceeding for the administration or enforcement of any requirement imposed under this chapter or the Atomic Energy Act of 1954, as amended;

"(2) testified or is about to testify in any such proceeding or;

"(3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other manner in such a proceeding or in any other

action to carry out the purposes of this chapter or the Atomic Energy Act of 1954, as amended [42 U.S.C. § 2011 *et seq.*].

"(b) Complaint, filing and notification

"(1) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of subsection (a) of this section may, within thirty days after such violation occurs, file (or have any person file on his behalf) a complaint with the Secretary of Labor (hereinafter in this subsection referred to as the 'Secretary') alleging such discharge or discrimination. Upon receipt of such a complaint, the Secretary shall notify the person named in the complaint of the filing of the complaint and the Commission."

Although the language of § 5851 does not appear to cover the specific actions of Chrisman in filing internal deviation reports, caselaw from the Tenth Circuit establishes that employees filing such reports are indeed covered by § 5851. In *Kansas Gas & Electric Co. v. Brock*, 780 F.2d 1505 (10th Cir. 1985), *cert. denied* 478 U.S. 1011 (1986), the relevant issue was whether the plaintiff engaged in protected activity under 42 U.S.C. § 5851(a) when he filed internal safety reports. Plaintiff, as a quality assurance inspector, was required to submit reports of deficiencies in equipment and lines manufactured by a KG&E subcontractor before such equipment could be implemented into the Wolf Creek Generating Station. Plaintiff performed inspections and filed reports outlining possible problems. after filing one of his safety reports, plaintiff was discharged. He filed a complaint seeking a remedy under the Energy Reorganization Act. The Secretary of Labor determined that plaintiff was fired in retaliation for the filing of internal safety reports. The Tenth Circuit held that § 5851 did cover an employee discharged for the filing of internal reports, and it affirmed the district court order which upheld and enforced the Secretary of Labor's remedial order directing KG&E to reinstate the employee, and to compensate him with back pay, attorney fees, and costs.

The Ninth Circuit agreed. *Mackowiak v. University Nuclear Systems, Inc.*, 735 F.2d 1159 (9th Cir. 1984). The Fifth Circuit disagreed. *Brown & Root, Inc. v. Donovan*, 747 F.2d 1029 (5th Cir. 1984). In denying review of *Kansas Gas & Electric Co. v. Brock*, Justices White, Blackmun, and O'Connor dissented, noting the direct conflict of the circuits regarding this issue. 92 L. Ed. 2d 724, 725.

Since the Tenth Circuit and the Secretary of Labor have determined that internal complaints are covered by § 5851, we conclude that Chrisman had an administrative remedy under that section.

Is the federal law, which provides a remedy for the employee, exclusive? Does the federal act preempt state law? Chrisman contends that the federal act is not preemptive of state public policy. In support of his position he relies upon *Stokes v. Bechtel North American Power Corp.*, 614 F. Supp. 732 (N.D. Cal. 1985), and *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 485 N.E. 2d 372 (1985), *cert. denied* 475 U.S. 1122 (1986).

In *Stokes*, a nuclear engineer was terminated, allegedly in retaliation for refusing to suppress information relating to quality assurance problems and design miscalculations at a nuclear plant. The *Stokes* court recognized the United States Supreme Court decision in *Pacific Gas & Elec. v. Energy Resources Comm'n.*, 461 U.S. 190, 75 L. Ed. 752, 103 S. Ct. 1713 (1983), holding the federal government preserves "complete control of the safety and 'nuclear' aspects of energy generation." 461 U.S. at 212. However, the Stokes court held that the employee's claim for retaliatory discharge was based upon California's clearly announced policy of ensuring the continued employment and job security of its citizens and not based upon nuclear safety. 614 F. Supp. at 742. The court based its decision in part on the fact that a California statute was regulating the economic aspects of nuclear power, not nuclear safety, and the court also emphasized the permissive character of the language used in § 5851. It concluded that the federal act did not supplant, but was merely supplemental to, the state law which provided remedies for an aggrieved employee. It found no preemption and remanded the case to the state court.

While *Stokes* is persuasive, Chrisman failed to cite another California federal court decision which reaches the opposite conclusion. In *Snow v. Bechtel Const. Inc.*, 647 F. Supp. 1514 (C.D. Cal. 1986), the court declined to follow the *Stokes* decision. The *Snow* court held that § 5851 of the Energy Reorganization Act preempted the employee's state cause of action for retaliatory discharge. Snow was employed as a carpenter at a nuclear power plant and notified the Nuclear Regulatory Com-

mission that Bechtel was violating established emergency evacuation procedures in the event of a nuclear accident. Later, Snow was terminated with the cause of termination listed as a reduction in the work force. The plaintiff brought his action in a California state court; Bechtel Construction removed it to the federal courts. The United States District Court said in part:

"The 'whistleblower' provision of § 5851 was patterned after another federal statute, the Mine Safety and Health Act, 30 U.S.C. §§ 820 et seq., S. Rep. No. 95-848, 95th Cong., 2nd Sess, at 29, 1978 U.S. Code Cong. & Admin. News at 7303. The two Acts 'share a broad, remedial purpose of protecting workers from retaliation based on their concerns for safety and quality.' *Mackowiak v. University Nuclear Systems, Inc.*, 735 F.2d 1159, 1163 (9th Cir. 1984). Subsequent to identifying this similarity between the two Acts, the Ninth Circuit held that the whistleblower provision in the Mine Safety and Health Act was an exclusive remedy that preempted any state action. *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1475 (9th Cir. 1984). The Ninth Circuit has not specifically addressed the exclusivity of the remedy contained in § 5851. *Olguin,* however, is persuasive authority for holding here that Snow's action is preempted by § 5851." 647 F. Supp. at 1517-18.

The court in *Snow* reasoned that the language utilized in the Mine Safety and Health Act was permissive and thus similar to the language of § 5851; yet the Ninth Circuit had determined such remedy to be exclusive and preemptive of state law. The *Snow* court concluded that the legislative history of § 5851 and the decision in *Olguin v. Inspiration Consol. Copper Co.*, 740 F. 2d 1468 (9th Cir. 1984), indicate "that primarily safety concerns were being addressed by the provisions of § 5851. Preservation of a complaining employee's position within the offending facility is a secondary, yet essential corollary of such a safety scheme." (647 F. Supp. at 1518.) The District Court held that the action was properly removed to federal court, and dismissed the case for lack of subject matter jurisdiction since the matter was within the exclusive province of the Secretary of Labor.

As we noted earlier, Chrisman also relies upon *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, as authority that neither the Atomic Energy Act nor the Energy Reorganization Act preempt a state tort action for retaliatory discharge. In *Wheeler,* plaintiff was discharged for refusing to work under conditions allegedly exposing him to radioactive materials. He contended that he was being required to work under conditions which were

violative of federal safety regulations. The issue of preemption was not briefed or argued by the parties. The Illinois Supreme Court, *sua sponte*, addressed the issue. The court did not thoroughly analyze the issue, but, relying primarily on *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 78 L. Ed. 2d 443, 104 S. Ct. 615 (1984), concluded that it was not Congress' intent to preempt state action. Justice Moran, in a lengthy and persuasive dissent, joined by Justice Ryan, concluded that the federal act preempts state action for retaliatory discharge resulting from either internal company disputes over radiation safety or reports to the federal regulatory agency. Justice Moran concluded that the purpose of § 5851 is to encourage employees and union officials to help assure that employers do not violate requirements of the Atomic Energy Act. The section "represents just a part of the comprehensive and pervasive Federal regulatory scheme on nuclear energy. . . . A more comprehensive statute could hardly be imagined." 108 Ill. 2d at 515. Justice Moran would hold that plaintiff's state cause of action for retaliatory discharge is preempted by federal law.

The United States Supreme Court in *Pacific Gas & Elec. v. Energy Resources Comm'n*, 461 U.S. 190, discusses preemption. It states:

"Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be found from a ' "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose." ' [461 U.S. 203-04.]

. . . .

"[T]he Federal Government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the States. When the Federal Government completely occupies a given field or an identifiable portion of it, as it has done here, the test of pre-emption is whether 'the matter on which the State asserts the right to act is in any way regulated by the Federal Act.' " 461 U.S. at 212-13.

As the *Snow* opinion and the dissenting opinion in *Wheeler* point out, there is massive federal legislation and regulation in the area of nuclear safety. Section 5851 not only provides a substantial and effective remedy for an employee who contends

he has been discharged because of "whistle-blowing," but it also provides the Federal Nuclear Regulatory Agency with invaluable information from those working in the field who are most likely to discern the problems relating to the public safety in the nuclear field. We hold that 42 U.S.C. § 5851 is primarily a safety regulation, and that Congress has preempted the field. We need not determine whether termination of an employee for "whistle-blowing" in nuclear and related industries violates state public policy or whether a further exception to the employment-at-will doctrine should be created. Congress has provided the exception by legislation, which we hold preempts the field. The trial court was correct in rejecting this claim.

Finally, Chrisman claims that the trial court erred in entering summary judgment on plaintiff's claim for discharge based on promissory estoppel. As factual background, he contends he transferred from one job to another with the same employer and at the same facility based upon the representation of a superior that if Chrisman did his job there should be no problems with job security. Within a year, he was terminated. The trial court summed up this issue as follows:

"Finally, Chrisman's claim for wrongful discharge based on promissory estoppel should be denied for failure to state a cause of action. The case of *Lorson v. Falcon Coach, Inc.*, 214 Kan. 670, 522 P.2d 449 (1974), [states] that under the doctrine of promissory estoppel, damages may be granted in Kansas even though and despite the theory of employment at will in certain circumstances. Chrisman alleges that he changed positions from one department to the next within the Philips corporate structure. The Court sees no evidence of detrimental reliance in that instance. After all, even in his prior position, Chrisman was terminable at will. In *Lorson,* the Supreme Court ruled that the Plaintiff could receive moving expenses based upon detrimental reliance. In the case at bar, Chrisman presents no damages based upon detrimental reliance. All of his allegations of damages arise from his termination."

We agree. Relying upon the promise, Chrisman moved from one position within the corporate structure of Philips to another. He had precisely the same job security in that position that he had in his previous position. We can find no suggestion of detrimental reliance in the record in this case and no suggestion of any damages sustained by Chrisman, other than for his termination. That issue may properly be determined in the remaining implied contract claim. The trial court properly sustained

Philips' motion for summary judgment on plaintiff's claim for relief based upon promissory estoppel.

The judgment is affirmed in part, reversed in part, and remanded to the trial court for further proceedings in conformity with this opinion.